**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane**

Civil Action No. 10-cv-00654-JLK-KMT

BRADLEY C. SMITH, derivatively on behalf of
OPPENHEIMER QUEST FOR VALUE FUNDS,

        Plaintiff,

    v.

OPPENHEIMERFUNDS DISTRIBUTOR, INC.,
MATTHEW P. FINK,
PHILLIP A. GRIFFITHS,
MARY F. MILLER,
JOEL W. MOTLEY,
MARY ANN TYNAN,
JOSEPH M. WIKLER
PETER I. WOLD,
BRIAN F. WRUBLE,
DAVID K. DOWNES,
RUSSELL S. REYNOLDS, JR.,
WILLIAM F. GAVIN,
THOMAS W. COURTNEY,
LACY B. HERRMANN, and
JOHN V. MURPHY,

        Defendants,

OPPENHEIMER QUEST FOR VALUE FUNDS,

        Nominal Defendant.

---

## DEFENDANTS' AMENDED MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. §§ 1404(a) AND 1406(a)

---

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF RELEVANT FACTS ........................................................................ 6

    A.    The Fund's Amended Declaration of Trust Mandates That A Shareholder Derivative Action May Be Brought Only In The SDNY ........................... 6

    B.    Neither Plaintiff Nor Any Of The Actual Defendants Is Domiciled In This District ...................................................................................... 6

    C.    Plaintiff's Claims Are Connected To The SDNY, Not This District ........ 7

    D.    There Is No Relationship Between This Case And The Oppenheimer Class Actions Currently Before This Court .............................................. 10

ARGUMENT .................................................................................................................. 11

I.    THE FUND'S MANDATORY FORUM SELECTION CLAUSE REQUIRES THIS CASE TO BE TRANSFERRED TO THE SDNY .................................... 12

II.    THE SDNY IS THE ONLY FAIR AND CONVENIENT VENUE FOR THE CONDUCT OF THIS CASE ............................................................................... 16

    A.    The Relevant Documents And Witnesses Are Located In The SDNY, Not Colorado ............................................................................................. 17

    B.    Plaintiff's Choice Of A Colorado Forum Is Entitled To No Deference .. 20

    C.    None Of The Remaining Factors Warrants Keeping This Case In This District ....................................................................................................... 21

III.    THIS CASE INDISPUTABLY "MIGHT HAVE BEEN BROUGHT" IN THE SDNY ........................................................................................................ 22

CONCLUSION ............................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Baytree Cap. Assoc., LLC ex rel. Broadcaster, Inc. v. Quan*,
   Nos. 08-civ-1602, 08-civ-2480, 2008 WL 1809606 (S.D.N.Y. Apr. 18, 2008) .....................20

*Bell v. Union Pac. R.R. Co.*,
   No. 07-cv-00209, 2007 WL 1851423 (D. Colo. June 27, 2007) .......................................20, 22

*Berentsen v. Titan Technology Partners, Ltd.*,
   No. 08-cv-02415, 2009 WL 3162251 (D. Colo. Sept. 30, 2009).........................................15

*Berish v. Bornstein*,
   770 N.E.2d 961 (Mass. 2002) ...............................................................................................12

*Cargill Inc. v. Prudential Ins. Co. of Am.*,
   920 F. Supp. 144 (D. Colo. 1996) ...................................................................................18, 21

*Compton v. BNSF Ry Co.*,
   No. 06-534, 2007 WL 1170596 (E.D. Okla. Apr. 18, 2007) ..................................................16

*D.E. Frey Group, Inc. v. FAS Holdings, Inc.*,
   387 B.R. 799 (Bankr. D. Colo. 2008) ...................................................................................13

*Doering v. Copper Mt., Inc.*,
   259 F.3d 1202 (10th Cir. 2001) ............................................................................................21

*Ervin and Assocs., Inc. v. Cisneros*,
   939 F. Supp. 793 (D. Colo. 1996) .........................................................................................20

*Foster v. Litton Indus., Inc.*,
   431 F. Supp. 86 (S.D.N.Y. 1977)...........................................................................................20

*Frontier Airlines, Inc. Retirement Plan for Pilots v. Security Pacific Nat'l Bank, N.A.*,
   696 F. Supp. 1403 (D. Colo. 1988)........................................................................................15

*Goldman v. McMahon, Brafman, Morgan & Co.*,
   No. 85-civ-2236, 1987 WL 12820 (S.D.N.Y. June 18, 1987)................................................23

*Hill v. Gibson Dunn & Crutcher*,
   420 B.R. 806 (Bankr. D. Colo. 2009) ....................................................................................21

*Hoffman v. Burroughs Corp.*,
    571 F. Supp. 545 (N.D. Tex. 1982) ...............................................................................11, 13

*Hustler Magazine, Inc. v. U.S. Dist. Court for the Dist. of Wyo.*,
    790 F.2d 69 (10th Cir. 1986) ....................................................................................................11

*In re Choice Hotels, Inc. Secs. Litig.*,
    Nos. 07-cv-00734, 07-cv-00812, 2008 WL 793621 (D. Colo. Mar. 24, 2008) ......................18

*In re Oppenheimer Funds Fees Litigation*,
    419 F. Supp. 2d 593 (S.D.N.Y. 2006)......................................................................................22

*In re Oppenheimer Funds Fees Litigation*,
    426 F. Supp. 2d 157 (S.D.N.Y. 2006)......................................................................................22

*Kidsco Inc. v. Dinsmore*,
    674 A.2d 483 (Del. Ch. 1995)..................................................................................................14

*Lessman v. Esco Corp.*,
    No. 05-cv-00414, 2006 WL 898133 (D. Colo. Mar. 31, 2006)...............................................16

*Lexington Inv. Co. v. Southwest Stainless, Inc.*,
    697 F. Supp. 139 (S.D.N.Y. 1988)...........................................................................................13

*Lou v. Belzberg*,
    834 F.2d 730 (9th Cir. 1987) ....................................................................................................20

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (U.S. 1972)..............................................................................................................13

*Milk 'N' More, Inc. v. Beavert*,
    963 F.2d 1342 (10th Cir. 1992) ................................................................................................13

*O'Brien v. Christensen*,
    662 N.E.2d 205 (Mass. 1996) ...................................................................................................12

*Qualmark Corp. v. Data Physics Corp.*,
    No. 07-02665, 2008 WL 4427079 (D. Colo. Sept. 26, 2008)...................................................17

*REO Sales v. Prudential Ins. Co. of Am.*,
    925 F. Supp. 1491 (D. Colo. 1996)..........................................................................................14

*Resources Inv. Corp. v. Hughes Tool Co.*,
    561 F. Supp. 1236 (D. Colo. 1983)..........................................................................................18

*Shesol v. I.V. House, Inc.*,
No. 06-cv-02551, 2008 WL 410587 (D. Colo. Feb. 13, 2008)..........................................12, 17

*Stewart Org. v. Ricoh Corp.*,
487 U.S. 22 (1988)...........................................................................................12, 13, 14

*Ten Mile Indus. Park v. Western Plains Services Corp.*,
810 F.2d 1518 (10th Cir. 1987) .......................................................................23

*Westwood Ventures, Ltd. v. Forum Financial Group*,
No. 97-civ-514, 1997 WL 266970 (S.D.N.Y. May 19, 1997)..................................18

### STATUTES/RULES

15 U.S.C. § 80a-43...........................................................................................23

28 U.S.C. § 1391.............................................................................................23

28 U.S.C. §1404(a) .................................................................................. *passim*

28 U.S.C. § 1406(a) ................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6)....................................................................................3

### OTHER AUTHORITIES

http://ssb.brand.edgar-online.com/EFX_dll/EDGARpro.dll?FetchFilingHTML1?
SessionID=DyiAH5MZz1U39k0&ID=6469352&AnchorName=HH_&AnchorDistance=
0&BeginHTML=%3Cb%3E%3Cfont+color%3D%22%23cc0000%22%3E&EndHTML=
%3C%2Ffont%3E%3C%2Fb%3E&SearchText=%3CNEAR%2F4%3E%28%22RUSSE
LL+S.%22%2C%22REYNOLDS%22%29 .......................................................15

http://www.sec.gov/Archives/edgar/data/831001/000120677410000406/citi_10k.htm ................9

http://www.sec.gov/Archives/edgar/data/817982/0000817982-96-000009.txt............................14

http://www.ml.com/index.asp?id=7695_8134_8317_17273............................................9

## PRELIMINARY STATEMENT

Plaintiff wrongfully filed this putative derivative action in the District of Colorado in derogation of the mandatory forum selection clause in the publicly-filed Amended and Restated Declaration of Trust (the "Amended Declaration of Trust") for the Oppenheimer Quest for Value Funds (the "Fund"), governing precisely the type of claims Plaintiff purports to assert. The mandatory forum selection clause expressly provides that shareholder derivative actions against the Fund's Trustees, such as Plaintiff's here, may be brought only in the United States District Court for the Southern District of New York (the "SDNY") or in a New York state court. Courts routinely honor these express forum selection clauses by transferring improperly-filed cases to the forum designated in the forum selection clause; Defendants respectfully submit that this action be handled likewise.

Even beyond the mandatory forum selection clause, transfer of this case to the SDNY is manifestly warranted because this is a case that has no genuine connection to the State of Colorado or this federal court. Plaintiff is a resident of North Carolina. He complains about decisions relating to Fund distribution payments to numerous non-party broker-dealers that were considered and implemented in the SDNY, by people who live and work outside of Colorado. All of the witnesses who made those decisions, or who are the directors and executives of the Defendants, all of the other material evidence reflecting those decisions, and most of the non-party broker-dealers, are in the SDNY, not the District of Colorado. Importantly, this case has no factual, legal, or

logical relationship at all to the several consolidated OppenheimerFunds class actions currently pending before this Court;[1] hence, no judicial efficiency will result from keeping this matter here.

The derivative complaint filed in this case by North Carolina resident Bradley Smith (the "Complaint") is putatively brought on behalf of the Fund, and names as defendants 14 of the individuals who served as Trustees of the Fund at some point between July 22, 2005 and March 19, 2010, as well as the principal underwriter/distributor for the Fund, OppenheimerFunds Distributor, Inc. ("OFDI").  The theory of the Complaint is that Defendants' "provision and approval" of "asset-based compensation to broker-dealer firms" with respect to mutual fund shares beneficially owned by Plaintiff (and presumably other fund investors) in "brokerage accounts" resulted in a violation by the broker-dealer firms (none of which is named as a defendant) of their alleged obligation to register as investment advisers pursuant to the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1, *et seq*.  As a result, Plaintiff contends, the Fund's distribution agreement with OFDI was "illegal," and thus violated the Investment Company Act of 1940, 15 U.S.C. § 80a-1, *et seq*.  This, Plaintiff alleges, gives rise to an implied right of action under the Investment Company Act against OFDI (the sole basis for federal subject matter jurisdiction) as well as several state common law claims against the individual defendants, all of which Plaintiff intends to pursue derivatively on behalf of the Fund.  Compl. ¶ 3.

---

[1]     *In re Champion Oppenheimer Fund*, 09-cv-00386-JLK-KMT, *In re Core Bond Fund*, 09-cv 1186-JLK-KMT, and *In re Oppenheimer Rochester Funds Group Sec. Litig.*, 09-md 02063-JLK-KMT (MDL Docket No. 2063).

The Defendants plan to move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6),[2] but in the present motion Defendants seek to transfer this action to the SDNY pursuant to 28 U.S.C. §§ 1406(a) and 1404(a).

Section 1406(a) requires a court to transfer a case filed in an improper venue to a venue in which the case could have (and should have) been brought.  Where a plaintiff files an action as to which a forum selection clause applies in a district other than that required in the forum selection clause, the court should transfer the case from the improper district to that provided in the forum selection clause.  Thus, in accordance with the applicable forum selection clause here, which designates the SDNY as the proper forum for this derivative litigation, this action, which Plaintiff has improperly filed in this District, must be transferred to the SDNY.

---

[2]     Through his Complaint, Plaintiff asks this Court to rewrite numerous federal laws and replace the judgment of several regulatory bodies by effectively overturning the well-functioning mutual fund distribution system that has long benefited millions of fund investors.  Not surprisingly, Plaintiff's legal theory suffers from numerous fundamental flaws, including:  (1) the sole federal claim that Plaintiff pleads, under Section 47(b) of the Investment *Company* Act, does not create a right of action to pursue the violation of the Investment *Advisers* Act that Plaintiff here alleges (*see* Compl. ¶ 53); (2) the affirmative duties that Plaintiff seeks to place on the Trustees of the Fund with respect to contractual payments between OFDI and retail broker-dealers are nowhere found in SEC Rule 38a-1, nor have they ever been recognized by any court; (3) the "asset-based compensation" paid by the Fund to OFDI and by OFDI to broker-dealer firms is perfectly lawful under the applicable SEC and FINRA rules, and neither regulatory body has even suggested otherwise; and (4) if Plaintiff has any potential claim at all, it would be against just his broker-dealer for its receipt, or the failure to disclose its receipt, of "asset-based compensation" without having registered (if such is the case) under the Investment Advisers Act as an investment adviser.

Defendants will present these key legal deficiencies, along with others, by way of Rule 12(b) motions.  It is Defendants' position that, as a matter of judicial efficiency, the filing of their dispositive motions should await resolution of this transfer motion.  Because Plaintiff has not been willing to agree to such a sequence, Defendants have filed a motion to stay that seeks such a result.

In addition, Section 1404(a) also warrants transfer to the SDNY.[3]  This District has no nexus to the relevant facts of this case.  None of the Defendants has its principal place of business or operations in this District and the overwhelming majority of events about which Plaintiff complains occurred in the SDNY, while none occurred in Colorado.  None of the 14 individual Trustee defendants is a resident of, or otherwise located in, Colorado.  OFDI is a New York corporation with its headquarters and principal place of business in New York City, where virtually all of its senior management personnel are located.  OFDI also carried out the distribution activities that are the subject matter of this action in and from its offices in New York City.  Not surprisingly, then, the overwhelming majority of witnesses, documents, and other information relevant to this case are located in the SDNY, while virtually none is located in Colorado.  The only material connection that this case has to Colorado is a remote one: the nominal defendant Fund (a Massachusetts business trust) has a Colorado mailing address, but not even its own office space or employees in Colorado.  This connection is rendered even more tenuous because this mailing address is merely the business address of the Fund's transfer agent.  The principal business of the Fund -- the management of its investment assets -- is conducted in New York City, and the oversight of that activity by its Board of Trustees, is conducted in New York City.

Plaintiff does not and cannot allege that any of the actual Defendants or the potentially relevant facts has any meaningful nexus to Colorado.  By contrast, the SDNY is the primary locus

---

[3]    As is true of the substantially-identical action also filed in this district involving another fund, the Oppenheimer Gold and Special Minerals Fund, *Smith v. OppenheimerFunds Distributor, Inc., et al.*, No. 10-cv-00655-JLK-KMT.  Defendants have also moved to transfer that action under Section 1404(a).

of both the Defendants, and of the allegedly wrongful decisions and transactions regarding the payment of "asset-based compensation" to retail broker-dealers:

- OFDI has its principal place of business and is headquartered in the heart of the SDNY;

- Many of the principal broker-dealer firms that received "asset-based compensation" are themselves based in the SDNY (and none is alleged to be based in Colorado);

- None of the Trustees is a Colorado resident (nor was any served with process in Colorado) -- instead, each was served in the SDNY; and

- None of the Trustees' challenged actions (or inactions) -- including the supposed "provision and approval" and payment of "asset-based compensation" -- occurred at a meeting of the Trustees held in Colorado during the time at issue in the Complaint.  At all times since at least November 2005, the Trustees either met in person in the SDNY or telephonically with no Trustee participating from Colorado.

Thus, proceeding in this District not only violates the applicable and mandatory forum selection clause, but it also would be inconvenient to all parties and non-party witnesses, and would impose unnecessary costs and burdens on the parties and the Court.

A plaintiff's choice of forum ordinarily is entitled to some weight on a Section 1404(a) challenge.  However, a plaintiff's forum choice is entitled to no deference where, as here, not only does a forum selection clause control, but a North Carolina plaintiff sues in a derivative capacity regarding conduct that did not occur in this District and for which the relevant documents and witnesses will not be found in this District.

In short, the operative forum selection clause mandates transferring this action to the SDNY pursuant to Section 1406(a).  Moreover, transferring this case to the SDNY undoubtedly would avoid substantial inconvenience and cost to the parties, relevant non-party witnesses, and the Court.  Consistent with years of settled case law granting Section 1404(a) and 1406(a) motions

- 5 -

for precisely these reasons, the Court should transfer the present case to its designated and most logical venue:  the SDNY.

## STATEMENT OF RELEVANT FACTS

### A.      The Fund's Amended Declaration of Trust Mandates That A Shareholder Derivative Action May Be Brought Only In The SDNY

Following an affirmative vote by the Fund's shareholders, on June 26, 2009, the Trustees duly adopted the Amended Declaration of Trust, which, among other amendments, included the addition of a mandatory forum selection clause to require that all shareholder derivative actions on behalf of the Fund be brought only in the SDNY:

> Any action commenced by a Shareholder, directly or derivatively, against the Trust or a Series or Class thereof, its Trustees or officers, shall be brought only in the U.S. District Court for the Southern District of New York, or if such action may not be brought in that court, then such action shall be brought in NY state court (the "Chosen Courts").  The Trust, its Trustees and officers, and its Shareholders (a) waive any objection to venue in either Chosen Court and (b) waive any objection that either Chosen Court is an inconvenient forum.

Amended Declaration of Trust §11.4(d).

In derogation of this mandatory forum selection clause, on March 19, 2010 -- nearly nine months after it took effect -- Plaintiff filed this derivative action in the U.S. District Court for the District of Colorado.

### B.      Neither Plaintiff Nor Any Of The Actual Defendants Is Domiciled In This District

Plaintiff is a North Carolina resident.  Compl. ¶ 10.  He alleges that since June 2006, he has beneficially owned (through a brokerage account at Merrill Lynch, which is the record owner) an unspecified number of Class C shares of the Oppenheimer Small- & Mid-Cap Fund, which is one

of the three series of the Fund.  *Id.* ¶¶ 10, 11.  Plaintiff brings this action derivatively on behalf of

the Fund, a Massachusetts business trust having a mailing address in this District at the offices of

its transfer agent.  *Id.* ¶ 11; *see* accompanying Declaration of Robert G. Zack in Support of

Amended Motion to Transfer Venue to the Southern District of New York Pursuant to 28 U.S.C.

§§1404(a) and 1406(a) ("Zack Decl.") ¶ 10.

OFDI, a New York corporation with its headquarters and principal place of business in the

World Financial Center complex in downtown New York City, is the principal underwriter and

general distributor of shares of the Fund.  Compl. ¶ 26.

Each of the 14 individually-named defendants is or was a Trustee of the Fund during the

period from July 22, 2005 through March 19, 2010.  *Id.* ¶¶ 12 - 25.  None of the individual

defendants is alleged to be a Colorado resident, and none of them resides in Colorado.  *Id.*; Zack

Decl. ¶ 11.

### C.     Plaintiff's Claims Are Connected To The SDNY, Not This District

Plaintiff's Complaint contains a single, wholly conclusory, allegation to support venue in

this District: "Venue is proper in this Court . . . because the Trust maintains its headquarters within

this District and because many of the acts complained of herein occurred in this District." Compl.

¶ 9.  Plaintiff goes no further in his Complaint, totally failing to allege *any* specific wrongful act

that purportedly occurred in this District.  Nor does Plaintiff mention the applicable forum

selection clause, much less attempt to explain away its enforcement.

Although only in this lawsuit as a nominal defendant, the Fund is alleged to have its

principal place of business in Centennial, Colorado.  *Id.* ¶ 11.  However, that Colorado address is

used merely for processing correspondence because it is the address of the Fund's transfer agent; it

- 7 -

is not where any of the Trustees resides, conducts business, or receives personal or other business mail.  *See* Zack Decl. ¶¶ 10-11.  Moreover, as is generally true for investment companies that are organized under the Investment Company Act of 1940, the Fund does not have any employees or its own office space, either in Colorado or elsewhere.  *Id.* ¶ 5.  The Fund is governed by its Board of Trustees (i.e., the individually-named Defendants in this case), that enters into contracts with third-party vendors -- e.g., an investment adviser, distributor, transfer agent -- to provide all the services to the Fund that it needs to conduct its business.  *Id.*

Almost all of the acts that Plaintiff complains of occurred in the SDNY.  For example:

- While none of the individual defendants resides in Colorado, five of the fourteen individual defendants are New York residents and eight of the remaining nine individual defendants are residents of states in close proximity to New York (Connecticut, Maryland, Massachusetts, and Pennsylvania).  Zack Decl. ¶ 11.[4]

- The Fund's Board of Trustees -- which Plaintiff alleges was responsible for the approval of the "asset-based compensation" at issue in this case -- conducted all but one of the meetings of the Fund's Board of Trustees during the time at issue in the Complaint either in person in New York or telephonically without any Trustee participating from Colorado.  *Id.* ¶ 7.

- OFDI -- the Fund's distributor and principal underwriter -- is incorporated in New York with its headquarters and principal place of business in the SDNY.  Compl. ¶ 26; Zack Decl. ¶ 3.

- All decisions since at least November 2005 regarding OFDI's payment of "asset-based compensation" to retail broker-dealers were made and/or reviewed in the SDNY.  Zack Decl. ¶ 13.

- The Fund and OFDI entered into the distribution and service plan and agreement at issue (the "12b-1 Plan") in New York City.  *Id.* ¶ 12.

---

[4]    Only one individual Defendant is a resident of a state (Wyoming) in closer proximity to Colorado than to New York.  Zack Decl. ¶ 11.

- At all times since at least November 2005, the annual review and approval of the 12b-1 Plan, under which the "asset-based compensation" at issue in this case was paid by the Fund to OFDI and by OFDI to the broker-dealer firms, was conducted by the Fund's Board of Trustees in New York. *Id.* ¶ 8.

- Also, at all times since at least November 2005, the reports by OFDI to the Fund's Trustees regarding the 12b-1 payments made by the Fund to OFDI and by OFDI to broker-dealers, occurred in New York. *Id.* ¶ 9.

- Documents regarding the Fund's payment of 12b-1 fees to OFDI, or OFDI's payment of such fees to retail broker-dealers, are located primarily in New York City. *Id.* ¶ 16.

Furthermore, central to Plaintiff's claims is the theory that the receipt by many retail broker-dealers of 12b-1 fees from OFDI constituted improper "asset-based compensation" because those broker-dealers purportedly were not correctly registered under the Investment Advisers Act. It follows that evidence will need to be adduced from those broker-dealers to determine whether in fact they received compensation, on what basis and to what end. Yet, none of those broker-dealers is alleged to be incorporated or headquartered in Colorado. To the contrary, two of the broker-dealer firms that received the largest amount of 12b-1 fees for their distribution and service activities with regard to all Oppenheimer mutual funds (not just this Fund) between 2005 and 2009 are Merrill Lynch and Citigroup, both of which also have their principal offices in the SDNY.[5] *Id.* ¶ 15.

Thus, none of the likely relevant witnesses resides in Colorado and none of the decisions since at least November 2005 or actions regarding the purportedly unlawful asset-based payments

---

[5]  *See* Citigroup, Inc. Form 10-K for year ended December 31, 2009, at 1, *available at* http://www.sec.gov/Archives/edgar/data/831001/000120677410000406/citi_10k.htm (principal executive offices located in New York City) and http://www.ml.com/index.asp?id=7695_8134 _8317_17273&wsUrl=http://localhost/Merrill/SO/4/GOLInc2.aspx&CountryID=37 (Merrill Lynch corporate headquarters located in New York City).

to retail broker-dealers occurred in Colorado.  The SDNY, in contrast, has significant contact with

the issues alleged in the Complaint, and is the venue in which most of the relevant documents and

witnesses are located.

>    **D.    There Is No Relationship Between This Case And The Oppenheimer Class
>           Actions Currently Before This Court**

As this Court is aware, three sets of consolidated class actions regarding nine Oppenheimer

funds are pending before this Court: *In re Champion Oppenheimer Fund*,

09-cv-00386-JLK-KMT, *In re Core Bond Fund*, 09-cv-1186-JLK-KMT, and *In re Oppenheimer*

*Rochester Funds Group Sec. Litig.*, 09-md-02063-JLK-KMT (MDL Docket No. 2063)

(collectively, the "Consolidated Cases").  There is no legal or factual similarity between the

Consolidated Cases and the present case.  The mutual funds involved in the Consolidated Cases

are different from the Fund at issue here, and the claims and allegations are completely different as

well.  As a result, keeping this case in the District of Colorado would not promote judicial

efficiency.

Each of the Consolidated Cases is a putative class action brought on behalf of investors in

certain fixed income Oppenheimer funds that alleges that those funds purportedly violated the

1933 Securities Act and the 1934 Exchange Act by failing to make adequate disclosure of the

particular fund's investments in a variety of derivative securities, such as mortgage-backed

securities and "inverse floaters."  The present case, on the other hand, is not a class action, does not

assert disclosure claims, and has nothing to do with any fund's investment in derivative securities

of any type.  As such, the documentary evidence and witnesses that would comprise discovery in

the present case (were the complaint to survive the forthcoming motions to dismiss) would be

entirely different from the discovery universe in the Consolidated Cases (if those cases survive

their motions to dismiss).  Because there will not be any significant overlap of witnesses or

documents between the Consolidated Cases and this case, and because the legal arguments that the

parties will make in support of their claims and/or defenses in the Consolidated Cases will be

completely different from those in the present case, no judicial efficiency would be achieved by

keeping the present case before this Court.

## **ARGUMENT**

Whether analyzed under Section 1406(a), which requires transfer of this case to the SDNY

in recognition of the applicable forum selection clause, or Section 1404(a), which weighs the

compelling factors that favor transferring this case to the SDNY, including the mandatory forum

selection clause, the conclusion is the same: this case should be transferred to the SDNY.

Under Section 1406(a) a court will transfer a "case to any district or division in which it

could have been brought" if the case was originally filed "in the wrong division or district."  28

U.S.C. § 1406(a).  Where a case involves a forum selection clause, transfer under Section 1406(a)

to the forum provided by the forum selection clause is required because "venue is wrong in the first

instance, and a plaintiff should not be allowed to gain an advantage by bringing suit in the wrong

court."  *Hoffman v. Burroughs Corp.*, 571 F. Supp. 545, 551 (N.D. Tex. 1982) (internal citation

omitted) (granting transfer pursuant to § 1406(a)).

On a Section 1404(a) venue transfer motion, a court assesses two issues: (1) whether the

case "might have been brought" in the proposed transferee district, and (2) whether the "competing

equities" weigh in favor of adjudicating the case in that district.  *Hustler Magazine, Inc. v. U.S.

Dist. Court for the Dist. of Wyo.*, 790 F.2d 69, 71 (10th Cir. 1986) (issuing mandamus where none

of the parties and only one witness had any connection to transferor state, yet the trial court refused

to give defendants an opportunity to establish that the interests of justice and convenience

warranted transfer); *see Shesol v. I.V. House, Inc.*, No. 06-cv-02551, 2008 WL 410587, at *2 (D.

Colo. Feb. 13, 2008) (Kane, J.) (finding "balance of equities tips heavily in favor of transfer"

where majority of important witnesses and documentary evidence were located in transferee

forum).  The first issue focuses on whether the proposed transferee court would have jurisdiction

over the defendants and whether venue would be proper there.  The second issue involves an

"individualized, case-by-case consideration of convenience and fairness."  *Stewart Org. v. Ricoh*

*Corp.*, 487 U.S. 22, 29 (1988).  The decision on a Section 1404(a) transfer is committed to the

sound discretion of the district court, *Shesol*, 2008 WL 410587, at *1.

Whether under Section 1406(a) or Section 1404(a), transfer of this action to the SDNY is

both warranted and appropriate.

## I.    THE FUND'S MANDATORY FORUM SELECTION CLAUSE REQUIRES THIS CASE TO BE TRANSFERRED TO THE SDNY

The Fund's Amended Declaration of Trust[6] contains the forum selection clause that

mandates that any shareholder action against the Fund's Trustees, whether direct or derivative,

must be litigated in the SDNY.  This contractual provision is applicable to the present action and,

alone, obliges transfer of this case to the SDNY.  Notably, Plaintiff's Complaint makes no mention

---

[6]    Under Massachusetts law, which governs the Fund as a Massachusetts business trust, the Fund's Amended Declaration of Trust, which "set[] out the trustees' rights and responsibilities," *Berish v. Bornstein*, 770 N.E.2d 961, 967 (Mass. 2002), is treated as a contract with the Fund's shareholders (e.g., Plaintiff).  *See, e.g., id*. at 980 (trustee "breached his contractual obligation set forth in the declaration of trust to issue statements to the nominee trust for the share of common expenses that it owed for the units that it owned"); *O'Brien v. Christensen*, 662 N.E.2d 205, 208 - 09 (Mass. 1996) (treating trustee's "express written obligations contained in the declaration of trust" as contractual in nature).

of the forum selection clause, much less why the Court should ignore it.  Moreover, Plaintiff

cannot provide any plausible basis for this Court to override enforcement of this mandatory clause.

A forum selection clause is "prima facie valid and should be enforced unless enforcement

is shown by the resisting party to be unreasonable under the circumstances." *Milk 'N' More, Inc.*

*v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992).  The burden is on the party seeking avoidance of

the forum selection clause, and "that party 'should bear a heavy burden of proof.'"  *D.E. Frey*

*Group, Inc. v. FAS Holdings, Inc.*, 387 B.R. 799, 807 (Bankr. D. Colo. 2008) (quoting *M/S Bremen*

*v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)); *see Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 33

(1988) (Kennedy, J., concurring) ("[A] valid forum selection clause is given controlling weight in

all but the most exceptional cases.").  Thus, a court may reject a defendant's request to transfer the

case to the forum designated in that clause only where a plaintiff is able to meet his heavy burden

of showing that enforcing the clause would be patently unreasonable under the circumstances

because (1) "trial in the selected forum would be inherently unfair," (2) the forum selection clause

"was procured by fraud or overreaching," or (3) enforcement of the clause would "'contravene a

strong public policy of the forum in which suit is brought, whether declared by statute or by

judicial decision." *D.E. Frey Group*, 387 B.R. at 804 (citing *Bremen*, 407 U.S. at 15)).

Unless a plaintiff can satisfy this heavy burden, the court will transfer the case pursuant to

Section 1406(a) because the case was filed "in the wrong division or district,"  28 U.S.C.

§ 1406(a), "and a plaintiff should not be allowed to gain an advantage by bringing suit in the

wrong court." *Hoffman*, 571 F. Supp. at 551 (internal citation omitted) (finding venue improper

under § 1406(a) because case was filed in forum other than that provided in operative forum

selection clause, and accordingly transferring action to the selected forum); *see also Lexington Inv.*

*Co. v. Southwest Stainless, Inc.*, 697 F. Supp. 139, 144 (S.D.N.Y. 1988) (because the "forum

selection clause [is] both valid and enforceable," venue in the present forum is improper and

transfer to the selected forum is warranted).  Likewise, under Section 1404(a), a forum selection

clause "plays a 'significant factor that figures centrally in [the court's Section 1404(a)] calculus'"

and is generally dispositive to a court's venue transfer analysis.  *REO Sales v. Prudential Ins. Co.

of Am.*, 925 F. Supp. 1491, 1495 (D. Colo. 1996) (granting transfer pursuant to forum selection

clause) (quoting *Stewart*, 487 U.S. at 29).

 Plaintiff cannot carry his burden of demonstrating that the court should ignore the

applicable forum selection clause and decline to transfer this case to the SDNY.  First, the SDNY

would not be an inherently unfair forum in which to conduct this litigation because Plaintiff should

have anticipated that the SDNY is where his claims would be adjudicated.  The nexus of Plaintiff's

allegations and the vast majority of relevant conduct allegedly giving rise to his Complaint

occurred in the SDNY.  Thus, the SDNY would not "be so gravely difficult and inconvenient that

he will for all practical purposes be deprived of his day in court."  *Bremen*, 407 U.S. at 17-18.

Indeed, given the overwhelming presence of relevant witnesses and information in the SDNY,

Plaintiff should have filed this litigation in the SDNY in the first place.  *See* Section II, infra.

 Second, Plaintiff cannot possibly argue the forum selection clause was obtained by fraud or

overreaching.  The Fund's Declaration of Trust expressly provided that the Declaration could be

amended by vote of the shareholders.  *See* Declaration of Trust of Quest for Value U.S.

Government Income Trust § 11.3(a), *available at*

http://www.sec.gov/Archives/edgar/data/817982/ 0000817982-96-000009.txt (Exhibit 24(b)(1));

*cf. Kidsco Inc. v. Dinsmore*, 674 A.2d 483 (Del. Ch. 1995) ("Where a corporation's by-laws put all

- 14 -

on notice that the by-laws may be amended at any time, no vested rights can arise that would

contractually prohibit an amendment," because in such a case, reliance on the previous bylaws is

justified).  In view of the right to amend the Fund's Declaration of Trust, the Trustees provided all

shareholders with notice of proposed amendments to the Declaration of Trust, including the forum

selection clause.[7]  After a shareholder meeting, and pursuant to shareholder approval, the Trustees

adopted the proposed amendments to the Fund's Declaration of Trust.  There can be no question

that the process through which the forum selection clause was incorporated into the Amended

Declaration of Trust was proper.

      Finally, transferring this case to the SDNY would promote, not contravene, Colorado

public policy because it would acknowledge a trust's right to govern its internal affairs by

designating an appropriate forum for the litigation of claims against it.  *See Bremen*, 407 U.S. at

15.

      Because Plaintiff does not and cannot allege any basis that would permit this Court to

ignore the governing forum selection clause which provides that venue is proper only in the SDNY

-- and, correspondingly, improper in the District of Colorado -- Section 1406(a) and Section

1404(a) mandate transfer of this case to the SDNY.  *See Frontier Airlines, Inc. Retirement Plan for*

*Pilots v. Security Pacific Nat'l Bank, N.A.*, 696 F. Supp. 1403, 1405 (D. Colo. 1988) (applying

Section 1406(a) to transfer action pursuant to forum-selection clause); *Berentsen v. Titan*

---

[7]    *See* May 16, 2009 Notice of Joint Special Meeting of Shareholders To Be Held on May 21, 2009,
available at http://ssb.brand.edgar-online.com/EFX_dll/EDGARpro.dll?FetchFilingHTML1?
SessionID=DyiAH5MZz1U39k0&ID=6469352&AnchorName=HH_&AnchorDistance=0&Begi
nHTML=%3Cb%3E%3Cfont+color%3D%22%23cc0000%22%3E&EndHTML=%3C%2Ffont%
3E%3C%2Fb%3E&SearchText=%3CNEAR%2F4%3E%28%22RUSSELL+S.%22%2C%22RE
YNOLDS%22%29.

*Technology Partners, Ltd.*, No. 08-cv-02415, 2009 WL 3162251, at *4 (D. Colo. Sept. 30, 2009) (because a mandatory forum selection clause applies, transfer to the selected forum is warranted pursuant to §1404(a)).

## II. THE SDNY IS THE ONLY FAIR AND CONVENIENT VENUE FOR THE CONDUCT OF THIS CASE

Even if the Court determines that the forum selection clause is somehow not dispositive of the question of whether to transfer this case to the SDNY, transfer is mandated under Section 1404(a) where, as here, "all events giving rise to the plaintiff's claim against the defendant occurred in the [transferee] District." *Compton v. BNSF Ry Co.*, No. 06-534, 2007 WL 1170596, at *2 (E.D. Okla. Apr. 18, 2007) (finding convenience of the witnesses and parties the "determining factor" and granting transfer); *see Lessman v. Esco Corp.*, No. 05-cv-00414, 2006 WL 898133, at *2 (D. Colo. Mar. 31, 2006) (granting motion to transfer where "all of the underlying events occurred" in transferee district).

The traditional "competing equities" factors therefore heavily favor transfer to the SDNY. In addition to the forum selection clause, the other factors relevant in determining whether a forum is convenient and fair for purposes of a § 1404(a) motion include:

- the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses;

- the cost of making the necessary proof;

- questions as to the enforceability of a judgment if one is obtained;

- the relative advantages and obstacles to a fair trial;

- the difficulties that may arise from congested dockets;

- the possibility of the existence of questions arising in the area of conflicts of laws;

- the advantage of having a local court determine questions of local law;

- plaintiff's choice of forum; and

- all other considerations that make a trial easy, expeditious and economical.

*See Shesol*, 2008 WL 410587, at *1 (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)).  Of these factors, only Plaintiff's choice of forum even theoretically could weigh against transfer of this action to the SDNY but, as demonstrated in Argument II.B, below, that choice is entitled to no deference because Plaintiff is not a resident of Colorado, he asserts this action derivatively on behalf of the Fund, and he does not allege that any of the conduct at issue occurred in this District.  Conversely, the accessibility of witnesses and other sources of evidence and the relative cost of making the necessary proofs all weigh heavily in favor of transferring this action to the SDNY.

The SDNY, not this District, is at the center of the events alleged to give rise to this action, and as such would be a much more convenient and cost-effective forum for the parties and the likely witnesses.  Plaintiff could have filed his complaint in the SDNY, where jurisdiction and venue are proper as to all Defendants.  Plaintiff's selection of Colorado as a venue warrants no deference because he is a North Carolina resident suing in a derivative capacity for conduct that took place outside of this District.

### A.      The Relevant Documents And Witnesses Are Located In The SDNY, Not Colorado

The location of witnesses has been recognized as the most important element of a Section 1404(a) analysis.  *See Qualmark Corp. v. Data Physics Corp.*, No. 07-02665, 2008 WL 4427079, at *2 (D. Colo. Sept. 26, 2008) ("convenience of witnesses and the ability to compel the testimony of unwilling witnesses is the most heavily weighted factor in the analysis").  A Section 1404(a)

transfer is warranted where the proposed transferee district "appears to have been the primary site

of defendants' performance . . . of their duties" because that "was where the majority of

defendants' employees are located" and was "the actual locus of events with respect to the claims."

*Westwood Ventures, Ltd. v. Forum Financial Group*, No. 97-civ-514, 1997 WL 266970, at *3

(S.D.N.Y. May 19, 1997) (transferring case against mutual fund because conduct in transferor

district had "no material connection to the alleged claims"); *see Cargill Inc. v. Prudential Ins. Co.*

*of Am.*, 920 F. Supp. 144, 147-48 (D. Colo. 1996) (Kane, J.) (transferring case where 10 of 24

witnesses were located in the transferee forum and none was located in Colorado); *In re Choice*

*Hotels, Inc. Secs. Litig.*, Nos. 07-cv-00734, 07-cv-00812, 2008 WL 793621, at *2 (D. Colo. Mar.

24, 2008) (transferring case even though the defendant had "a substantial number of employees in

Colorado" because the plaintiffs did not "demonstrate[] that any [Colorado-based] employees are

likely to have any knowledge of the facts relevant to the plaintiffs' securities fraud claims");

*Resources Inv. Corp. v. Hughes Tool Co.*, 561 F. Supp. 1236, 1238 (D. Colo. 1983) (transferring

case to Southern District of Texas because "[m]any of the witnesses here involved reside in Texas,

and the events that gave rise to the lawsuit occurred in Texas").

       Here, as demonstrated above (*see supra* pp. 7 - 9), the SDNY is where the relevant

transactions were conceived, executed, and performed; Plaintiff does not allege otherwise.  At all

times since at least November 2005, the Trustees (none of whom is a Colorado resident) met in the

SDNY (or telephonically), including with respect to the distribution agreement between the Fund

and OFDI and the Rule 12b-1 plans approved by the Trustees for payment of certain distribution

and client services expenses from the Fund's assets.  Zack Decl. ¶¶ 7-9, 11.  The Fund and OFDI

entered into that distribution agreement in New York.  *Id.* ¶ 12.  At all times since at least

November 2005, all decisions regarding OFDI's payment of "asset-based compensation" to retail broker-dealers were made and/or reviewed within the SDNY.  *Id.*  ¶ 13.  At all times since at least November 2005, the reports to the Fund's Board regarding payments under the Fund's 12b-1 Plan were made by OFDI in the SDNY, and the Fund Board's review of and decision about the annual renewal of the 12b-1 Plan occurred in the SDNY.  *Id.* ¶ 9.

Furthermore, many of the broker-dealer contracts pursuant to which OFDI paid "asset-based compensation" also were executed in New York.  *Id.* ¶ 14.  Two of the largest recipients of those payments, Merrill Lynch and Citigroup, are themselves based in the SDNY.  *Id.* ¶ 15.  Indeed, OFDI's business executives who entered into those business relationships with the recipient broker-dealer firms and who were responsible for those business relationships were and are located at OFDI's headquarters in New York City.[8]  Thus, the relevant documents and witnesses are located in the SDNY, not in Colorado, and nearly all of the witnesses with knowledge relevant to Plaintiff's claims are found in the SDNY, not in Colorado.  Accordingly, litigating this case in the SDNY would be exponentially more convenient and cost-efficient for the numerous potential witnesses and the parties.

---

[8]     Moreover, litigating this action in the SDNY would reduce the disruptions to OFDI's business and avoid the potentially significant costs that OFDI would incur if critical personnel were forced to travel or were unable to work for any lengthy period of time due to their involvement in litigation pending in Colorado.  *See, e.g., In re Amkor Tech., Inc. Secs. Litig.*, No. 06-298, 2006 WL 3857488, at *4 (E.D. Pa. Dec. 28, 2006) (transferring a case to, among other things, avoid "disruption" of the daily activities of the defendant corporation).  Moreover, even if this case remained in this District, Plaintiff would necessarily travel a significant distance from North Carolina.  But, if this case is transferred to the SDNY, Plaintiff's travel from North Carolina to the SDNY would be shorter than that to Colorado.

**B.      Plaintiff's Choice Of A Colorado Forum Is Entitled To No Deference**

While a plaintiff's choice of forum ordinarily is entitled to some weight on a Section

1404(a) motion, this is a derivative action and thus the plaintiff's choice of forum is of reduced

significance.  *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (recognizing that "when an

individual brings a derivative suit . . . the named plaintiff's choice of forum is given less weight"

and affirming transfer because, among other things, the majority of witnesses lived and worked in

New York and therefore the costs of litigation "would be drastically reduced if the case were heard

in New York"); *Foster v. Litton Indus., Inc.*, 431 F. Supp. 86, 87-88 (S.D.N.Y. 1977) (transferring

a derivative complaint where none of the operative facts occurred in the transferor district and the

corporate defendants maintained principal places of business in the transferee district).  Courts

have reached this conclusion because a derivative plaintiff is "only one of many potential

plaintiffs, all of whom could with equal show of right go into their many home courts."  *Baytree*

*Cap. Assoc., LLC ex rel. Broadcaster, Inc. v. Quan*, Nos. 08-civ-1602, 08-civ-2480, 2008 WL

1809606, at *6 (S.D.N.Y. Apr. 18, 2008) (internal quotation marks omitted) (granting transfer).

Moreover, "where the plaintiff's choice of forum is not his residence, it is given much less

weight in ruling on a discretionary transfer motion."  *Ervin and Assocs., Inc. v. Cisneros*, 939 F.

Supp. 793, 799 (D. Colo. 1996) (Kane, J.) (granting transfer); *see also Bell v. Union Pac. R.R. Co.*,

No. 07-cv-00209, 2007 WL 1851423, at *3 (D. Colo. June 27, 2007) (granting transfer to district

where plaintiff suffered injury and where majority of witnesses reside).  Here, Plaintiff is a resident

of North Carolina, not Colorado.  Compl. ¶ 10.

Lastly, where the "transactions or conduct underlying the cause of action did not occur in

the forum state," any deference is even further diminished.  *Bell*, 2007 WL 1851423, at *3; *see*

*also Cargill*, 920 F. Supp. at 147 ("no basis . . . to accord substantial deference" to the plaintiff's choice of forum because it was complaining about activity occurring outside its chosen forum). Notably, Plaintiff never alleges that any specific conduct related to this action occurred in Colorado.  Rather, his claims focus on actions that occurred in the SDNY -- where the Trustees met to approve, from where OFDI paid, and where many broker-dealer firms received the purportedly unlawful "asset-based compensation."

Thus, the usual rationale for deferring to a plaintiff's choice of forum is absent here.  The Court therefore should decide this motion based on the overwhelming conclusion that convenience and efficiency would be served best by litigating this case in the SDNY.

### C.    None Of The Remaining Factors Warrants Keeping This Case In This District

The other factors in the venue transfer analysis are either neutral or not applicable to the Court's analysis of whether to transfer this case.

- None of Plaintiff's claims requires analysis of Colorado law,[9] meaning that the general disinclination to transfer a case from a court that will apply its local law does not apply;

- Conflicts of laws will not impact the resolution of this case because a SDNY court still would apply Colorado choice of law rules;[10]

- A judgment in either District will be enforceable;

---

[9]     Plaintiff's claim for violation of the ICA will be governed by federal law.  Plaintiff's state common law claims will be governed either by Massachusetts law (based on the place of the Fund's organization) or New York law (based on the locus of the alleged wrongdoing).  *See Hill v. Gibson Dunn & Crutcher*, 420 B.R. 806, 821 (Bankr. D. Colo. 2009) ("under the internal affairs doctrine, Delaware law governs the determination of [the] directors' liability . . . unless, with respect to this issue, some other state has a more significant relationship to the parties and the transaction").

[10]    *See Doering v. Copper Mt., Inc.*, 259 F.3d 1202, 1209 (10th Cir. 2001) ("Generally, when a district court transfers a case to another forum, the transferee court must follow the choice of law rules of the transferor court.").

- Both this District and the SDNY would provide Plaintiff a fair forum for the adjudication of this action; and

- Docket congestion will not impair the conduct of the litigation in either the SDNY or this District because the median time interval for trials in either District is substantially similar.

Because the weight of the Section 1404(a) factors strongly favors transferring this case to the SDNY, and because no factor militates against transfer, this Court should transfer this case to the SDNY.

## III.   THIS CASE INDISPUTABLY "MIGHT HAVE BEEN BROUGHT" IN THE SDNY

An action "might have been brought" in the proposed transferee district if the court in that district would have jurisdiction over the defendants in the action and venue would be proper in that court. *See*, *e.g.*, *Bell*, 2007 WL 1851423, at *3 (transferring case and finding "[t]his case could have also been brought in [transferee district], where the accident took place and where [defendant] also does business").

Here, there should be no doubt that this action could have been brought in the SDNY.[11] Each of the Defendants believes it is subject to jurisdiction in the SDNY.[12] In addition, venue would be

---

[11]   Notably, Plaintiff's counsel brought an action against the Fund and its trustees, along with other Oppenheimer funds and related defendants, in the SDNY within the last five years; the outcome of that litigation may explain Plaintiff's counsel's attempt to seek another forum. *See In re Oppenheimer Funds Fees Litigation*, 419 F. Supp. 2d 593 (S.D.N.Y. 2006) and 426 F. Supp. 2d. 157 (S.D.N.Y. 2006).

[12]   On the other hand, the claims that have been brought against the Trustees in this District are subject to dismissal, both for lack of personal jurisdiction over the Trustees and for lack of proper venue. To support the Court's exercise of personal jurisdiction, the Complaint alleges in only the most conclusory way that "[t]his Court has personal jurisdiction over each of the defendants because the Trust's principal place of business is located within this District and all of the defendants have conducted business in this District, including business relating to the claims herein being asserted on behalf of the Trust." Compl. ¶ 8. As to the Trustees, each of these allegations is either not relevant or not correct. Even if the Trust's "principal place of business" were located within this District, that would not confer personal jurisdiction over any of the individual Trustees. Personal jurisdiction over individual Trustees will be proper only if the individual has had enough of his own relevant contacts with this State to make it fair to force him to defend himself here. *See Ten Mile*

- 22 -

proper in the SDNY under both the ICA's special venue provision (15 U.S.C. § 80a-43) (as to OFDI) and the general venue provision of 28 U.S.C. § 1391 (as to all Defendants).  Pursuant to the ICA's special venue provision, venue is proper only where (1) any act or transaction constituting the violation occurred; (2) the defendant is an inhabitant; or (3) the defendant transacts business. 15 U.S.C. § 80a-43.  *See Goldman v. McMahon, Brafman, Morgan & Co.*, No. 85-civ-2236, 1987 WL 12820, at *1 (S.D.N.Y. June 18, 1987) (finding venue proper under 15 U.S.C. § 80a-43 because "[t]he acts and transactions forming the basis of plaintiffs' claim allegedly occurred in this District").  As set forth herein, because OFDI is incorporated and has its principal place of business in New York and the alleged wrongdoing occurred within the SDNY, venue is proper in the SDNY as to all Defendants.

---

*Indus. Park v. Western Plains Services Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987) ("Jurisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself, and jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state.").  As noted above, none of the Trustees resides in Colorado; the Trustees conduct virtually all Fund business in New York; and the claims asserted against them arise from such conduct.

For the same reasons, Plaintiff has failed to show that this District is a proper venue to try the claims against the Trustees.  Plaintiff bases venue only on 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 80a-43. Compl. ¶ 9.  But because the Trustees are not subject to any claims under the ICA, the venue provision of the ICA has no application to them.  For venue to be proper in this District under Section 1391(b)(2), this must be a District "in which a substantial part of the events or omissions giving rise to the claim occurred."  But none of those "events or omissions" occurred in this District.

## <u>CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCivR 7.1A</u>

Pursuant to D.C.COLO.LCivR 7.1A, Defense counsel conferred with counsel for Plaintiff.

Plaintiff opposes the relief sought herein.

## <u>CONCLUSION</u>

For the foregoing reasons, this case should be transferred to the SDNY pursuant to 28

U.S.C. §§ 1404(a) and 1406(a).


Dated:  June 8, 2010

*s/ Stephanie Dunn*
Stephanie E. Dunn
PERKINS COIE LLP
1899 Wynkoop Street, Suite 700
Denver, CO  80202-1043
Telephone:  303.291.2300
Facsimile:  303.291.2400
Email:  sdunn@perkinscoie.com

William K. Dodds
DECHERT LLP
1095 Avenue of the Americas
New York, NY  10036-6797
Telephone:  212.698-3557
Facsimile:  212.698-3599
william.dodds@dechert.com

David A. Kotler
DECHERT LLP
902 Carnegie Center, Suite 500
Princeton, New Jersey 08540
Telephone:  609.955-3200
Facsimile:  609.955-3259
david.kotler@dechert.com

***Attorneys for Defendants OppenheimerFunds
Distributor, Inc., William F. Glavin and John V.
Murphy***

- 24 -

*s/ Edward Lyons*
Edward T. Lyons, Jr.
JONES & KELLER
1999 Broadway, Suite 3150
Denver, CO 80202
Tel: (303) 573-1600
Fax: (303) 573-8133
E-mail: elyons@joneskeller.com

Arthur H. Aufses, III
Yehudis Lewis
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: 212.715.9100
Facsimile: 212.715.8000
aaufses@kramerlevin.com

***Attorneys for Defendants Matthew P. Fink, Phillip
A. Griffiths, Mary F. Miller, Joel W. Motley, Mary
Ann Tynan, Joseph H. Wikler, Peter I. Wold, Brian
F. Wruble, David K. Downes, Russell S. Reynolds,
Jr., Thomas W. Courtney and Lacy B. Herrmann***

- 25 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 8th day of June, 2010, I electronically filed a true and correct copy of the foregoing **DEFENDANTS' AMENDED MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. §§ 1404(a) AND 1406(a)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Arthur H. Aufses, III**
  aaufses@kramerlevin.com
- **Lauren Block**
  lblock@milberg.com
- **Jeffrey A. Chase**
  jchase@jcfkk.com,vlsanders@jcfkk.com
- **William K. Dodds**
  william.dodds@dechert.com,luis.lopez@dechert.com
- **Stephanie Erin Dunn**
  sdunn@perkinscoie.com,sdunn-efile@perkinscoie.com
- **David A. Kotler**
  david.kotler@dechert.com
- **Edward Thomas Lyons, Jr.**
  elyons@joneskeller.com
- **Robert Nolen Miller**
  rmiller@perkinscoie.com,rmiller-efile@perkinscoie.com
- **Andrew Wilson Myers**
  amyers@jacobschase.com,cjones@jacobschase.com
- **Janine Lee Pollack**
  jpollack@milberg.com
- **Michael Champlin Spencer**
  mspencer@milberg.com

I hereby certify that on June 8, 2010, a true and correct copy of the foregoing was served by hand delivering same to the following:

Jeffrey Chase
Andrew Wilson Myers
Jacobs Chase Frick Kleinkopf & Kelley
1050 17th Street, Suite 1500
Denver, CO 80265

*s/ Stephanie Dunn*
Stephanie E. Dunn
Perkins Coie LLP
1899 Wynkoop Street, Suite 700
Denver, CO  80202-1043
Telephone:  303.291.2300
Facsimile:  303.291.2400
Email:  sdunn@perkinscoie.com

***Attorneys for Defendants
OppenheimerFunds Distributor, Inc.,
William F. Glavin and John V. Murphy***